UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID BUTLER | ) CIVIL ACTION NO. 3:15-CV-00374-WWE |
| Plaintiff, | ) |
| | ) |
| V. | ) |
| | ) |
| HALLKEEN MANAGEMENT, INC. and | ) |
| HALLKEEN EAST HARTFORD LIMITED | ) |
| PARTNERSHIP | ) |
| Defendants. | ) JULY 13, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' OBJECTION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**FACTS:**

At all relevant times prior to February 18, 2015, the property located at 125 Plain Drive, East Hartford, Connecticut (Hereinafter referred to as the Property.) was leased to the plaintiff, David Butler (Hereinafter referred to as Butler.).   The Property is a Townhouse Style Condominium, located in a development called Summerfield Townhouses. (Maguire Aff. ¶ 5.) Summerfield Townhouses is comprised of approximately 395 units, which are rented to low income and Section 8 qualified individuals. (Maguire Aff. ¶ 5.)   At all times alleged in the Complaint, the Property was owned by the defendant HallKeen East Hartford Limited Partnership and managed by HallKeen Management, Inc. (Collectively referred to hereinafter as "HallKeen".) (Compl. ¶7-8.)

- 1 -

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510



Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

At all relevant times prior to March 1, 2015, Maida Gonzalez (Hereinafter referred to as Gonzalez.) was the property manager at Summerfield Townhouses.  (Maguire Aff. ¶ 7.)  On January 14, 2014, Butler filed a Fair Housing complaint with the Commission on Human Rights and Opportunities ("CHRO") alleging HallKeen discriminated against him in violation of state and federal fair housing laws by refusing to grant his request for a reasonable accommodation of his disability.[1]  (Compl. ¶ 11.)   Butler's CHRO claim is now pending in the Hartford Housing Court.

On Monday, January 12, 2015, the defendants' employees became aware of a damaged pipe at the Property.  The pipe was allowing water to flow into the first floor and down to the basement. (Rodriquez Aff. ¶ 8.)  A portion of the dining room ceiling, in the area of the damaged pipe had come down. (St. Peter Aff., Exhibit B, p. 3. Visual Observations.)   Butler was not present at the Property when the damaged water pipe was discovered nor did he return to the Property when the defendants' employees attempted to mitigate the damage. (Butler Dep. p.50, Rodriquez Aff. ¶ 12.)  On January 12, 2015, ServiceMaster was hired to come to the Property and remove excess water from the kitchen, dining room and living room floors and to prepare an estimate of the damage. (St. Peter Aff. ¶ 3.) The defendants' agents believed Butler was living away from the Property. (Rodriquez Aff. ¶ 13.)  Butler testified that he was not at the Property

---

[1] The defendants hereby object to any exhibits offered by the plaintiff that contain settlement discussion on the basis that under Rule 408 of the Federal Rules of Evidence statements made during settlement negotiations are not admissible unless offered pursuant to subsection (b).



One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

when the water damage occurred. (Butler Dep. p. 50.)  Butler testified he does not remember when he was last at the Property before the pipe burst. (Butler Dep. p. 50.)

On or about January 12, 2015, Gonzalez reported the damage to HallKeen's insurance company, CHUBB & Sons. (Maguire Aff. ¶ 9.)   On January 12, 2015, Attorney Jeff Turk (Hereinafter referred to as Turk), Corporation Counsel for HallKeen, e-mailed Butler's attorney to advise him that HallKeen employees had discovered the damaged water pipe in the Property. (Turk Aff. ¶ 7-8.)

The Property was not habitable after the water damage occurred. (Rodriguez Aff. ¶ 16.) Butler testified that as a result of the water damage the Property was not habitable. (Butler Dep. p. 72.)  Butler testified that the floors in the Property had buckled and could be a tripping hazard. (Butler Dep. p. 72.)  Butler testified that he had concerns that asbestos might be contaminating his belongings. (Butler Dep. p. 127.)  Butler testified the Property did not smell great after the water damage occurred. (Butler Dep. p. 72.)  On Thursday, January 29, 2015, the Property was inspected by, among others, an insurance adjuster for CHUBB & Sons, and a representative from Envirocheck. (Turk Aff. ¶ 10.)   Counsel for the plaintiff was present during the inspection, however the plaintiff was not present. (Turk Aff. ¶ 11.)

On Monday, February 9, 2015, Geoffrey St. Peter, from ServiceMaster sent Gonzalez an e-mail stating, in part, that asbestos was present in the walls, ceilings and kitchen floor and an asbestos company would have to clean all surfaces. (St. Peter Aff. ¶ 10.)  After speaking with

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
& SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

Mr. St. Peter, Pedro Rodriguez, the Maintenance Supervisor for HallKeen at Summerfield Townhouses, understood everything on the first floor and in the basement was contaminated by asbestos. (Rodriguez Aff. ¶ 17-18.)

On Friday, February 13, 2015, HallKeen Management participated in a conference call to discuss the condition of the Property after the water damage. (Maguire Aff. ¶ 10.)   During that conference call, Gonzalez shared Envirocheck's findings. (Maguire Aff. ¶ 11.)  Gonzalez also advised HallKeen that there may be asbestos contamination in the Property. (Maguire Aff. ¶ 12.) HallKeen had in place on February 13, 2015 and for sometime prior, an Asbestos Operations & Maintenance Plan for addressing, among other things, the possibility of asbestos being disturbed in a unit. (Maguire Aff. ¶ 13.)  Section 4.7.2 of the Asbestos Operations & Maintenance Plan called, in part, for all personnel and occupants to be vacated from the immediate area, isolating the affected area, and providing appropriate protection for workers, among other things. (Maguire Aff. ¶ 15.)   Based upon the report from Envirocheck, the information Gonzalez communicated to HallKeen Management from Mr. St. Peter's e-mail and HallKeen's Asbestos Operations & Maintenance Plan, HallKeen decided that the following action needed to be taken immediately:

  a.  To change the locks on the Property because the report showed it was
      contaminated with mold and asbestos;

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

b.      To post a sign that the locks had been changed because of the possible health hazard;

c.      To advise Butler's attorney of the findings and the fact that Hallkeen Management needed to change the locks to prevent any exposure to the contaminants;

d.      To offer Butler another unit to move to; and

e.      To ask ServiceMaster for a remediation company referral. (Maguire Aff. ¶ 16 .)

On February 13, 2015, Gonzalez confirmed that the locks had been changed and a sign was posted on the door to the Property stating that it has been secured because of a health hazard. (Maguire Aff. ¶ 18.)   Butler testified that he saw the sign. (Butler Dep. p. 121.)

The decision to change the locks to the Property was based upon the defendants' concern that Butler, the defendants' employees and or contractors might be inadvertently exposed to asbestos or mold contamination, which could be a health hazard, if they were to enter into the Property without the proper protection. (Maguire Aff. ¶ 19.)  At no time was retaliating against Butler for filing a CHRO Complaint a factor considered and or discussed by HallKeen when it decided to secure the Property. (Maguire Aff. ¶ 20.)

At no time prior to this lawsuit being filed was it communicated to HallKeen that Butler was homeless.[2] (Maguire Aff. ¶ 21.)   At no time after the water damage occurred did HallKeen

---

[2] Mr. Butler testified that he did not sleep in the unit after the water leak was discovered on January 12, 2015. (Butler Dep. p 70.)  However, the plaintiff argues in Footnote 1 of his memorandum that as a result of the lockout Mr. Butler was homeless.  The locks were changed on February 13, 2015.  Mr. Butler was clearly staying some

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

Halloran
&Sage LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

receive a request from Butler or his agent to provide him temporary housing. (Maguire Aff. ¶ 22.)  On Friday, February 13, 2015, Attorney Turk sent an e-mail to Butler's attorney, Salmun Kazerounian, to advise him HallKeen had secured Butler's Property because testing from the Property indicated that there was asbestos contamination in the Property.  (Turk Aff. ¶ 12.)  On Tuesday, February 17, 2015, Attorney Turk wrote to Attorney Kazerounian and extended an offer to transfer Butler to another unit within the complex with a parking space outside the unit. (Turk Aff. ¶ 14.)  On February 18, 2015, Butler executed a lease with HallKeen to occupy 95 Smith Drive, East Haven. (Butler Dep. p. 115.)   Because Butler received subsidized housing HallKeen was required to close out his lease for the Property before it could execute a new lease for 95 Smith Drive.  (Maguire Aff. ¶ 23.)

On or about February 23, 2015, Butler's attorney contacted Attorney Turk with regard to obtaining Butler's mail that had been delivered after the Property had been secured, and to request the status of the inventory of Butler's belongings. (Turk Aff. ¶ 17.)   Attorney Turk advised Butler's attorney that HallKeen was not denying his client access to his personal belongings but that it was not safe and if he disagreed he should let him know and they could discuss it. (Turk Aff. ¶ 18.)   Butler testified that he had concerns that asbestos might be contaminating his belongings. (Butler Dep. p. 127.)   Butler testified that it was HallKeen's responsibility to have his personal belongings tested for asbestos before they were released to

---

place else for the month proceeding the locks being changed, so the claim that he was homeless after the locks were changed seems disingenuous and designed to engender sympathy from the Court.

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
& SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

him. (Butler Dep. p. 128.)   Butler testified that he wanted them to inspect and release his personal belongings immediately. (Butler Dep. p. 171.)   Butler, through his counsel, had repeated contact with Attorney Turk regarding obtaining an inventory of Mr. Butler's belongings so that Mr. Butler could give input on what is and is not thrown away. (Pltf. Memo of Law, Exhibit D, p. 28.)

HallKeen hired Mystic Air Quality Consultants to test Butler's belongings for asbestos contamination. (Turk Aff. ¶ 20.)  On March 12, 2015, Attorney Turk received the results of the testing and that day advised Butler's attorney that Butler's belongings were not contaminated so he could move them into his new residence. (Turk Aff. ¶ 21, 22.)

Mr. Butler testified he contacted the East Hartford Health Department. (Butler Dep. p. 124.)  On or about February 17, 2015, Attorney Turk responded to a call from the East Hartford Health Department regarding a complaint Butler filed regarding the Property and offered to give them anything they needed. (Turk Aff. ¶ 24, 25.)   Butler withdrew the complaint to the Health Department because he had been moved. (Turk Aff. ¶ 25.)

Butler testified that a CB radio was stolen from the Property. (Butler Dep. p. 101.)  Butler testified that besides for the CB radio he is not missing any other personal property. (Butler Dep. p. 150.) Butler testified that he never used the CB radio because it did not have an antenna. (Butler Dep. p 102.)  Butler testified that he has no idea who took the CB radio. (Butler Dep. p. 104.) Butler testified that he does not know for sure if a HallKeen employee stole the CB radio.

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

(Butler Dep. p. 150.) Butler testified that he does not know when the CB radio was taken. (Butler Dep. p. 104.)  Butler testified that he would leave the back door to the Property unlocked when he was not home. (Butler Dep. p. 34.)

HallKeen paid to have an independent contractor move Butler's personal belongings from the Property to 95 Smith Drive. (Rodriguez Aff. ¶ 20, Butler Dep. p 130.)  Butler's personal belongings could not be moved until Butler agreed to a date for the move and identified what he wanted to take and what he wanted thrown away. (Rodriguez Aff. ¶¶ 21-24.)  Butler's attorney requested that none of Butler's personal belongings be disposed of until Butler had a chance to review the inventory. (Pltf. Memo. of Law, Exhibit D, p.28.)

On or about March 13, 2015, the plaintiff filed the within Complaint alleging the defendants discriminated against him violating 42 U.S.C. §3617 and Conn. Gen. Stat. §46a-64 et seq.  The Complaint also alleges the defendants violated §47a-43 et seq. and Conn. Gen. Stat. §42-110a et seq, of the Connecticut Unfair Trade Practices Act (CUTPA).  Additionally, the Complaint alleges the defendants committed conversion of Butler's personal property.

Butler now moves for summary judgment as to Counts Two, Three and Four of the Complaint.  The defendants have previously moved for summary judgment on these Counts and Count One of the Complaint.  The defendants hereby object to the plaintiff's Motion for Summary Judgment, and assert that summary judgment should enter in their favor.

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

Alternatively, the defendants argue the Court should reserve judgment on Counts Two, Three and Four for the jury.

**STANDARD:**

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party.  Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co., 424 F. Supp.2d 388, 391 (D. Conn. 2006) (citation omitted).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing that there is a genuine issue of material fact.  Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  The nonmoving party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.  Id. (citing Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  While the nonmoving party's evidence must be accepted as true, and the nonmoving party must be given the benefit of all reasonable inferences, if the evidence in the record, viewed in this manner, would be insufficient to support a jury verdict for the nonmoving party, summary judgment may be granted to save the parties and the public the expense of an unwarranted trial.  Knox v. City of New Haven, 357 F. Supp. 2d 449, 451-452 (D. Conn. 2005) (citations omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S.

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

242, 252, 106 S. Ct. 2505 (1986) (stating that the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the non-movant).

Connecticut Courts have held that factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. See Ferreira v. Pringle, 255 Conn. 330, 345, 766 A.2d 400 (2001)

## LAW AND ARGUMENT:

### CONN. GEN. STAT. §§47a-43(a) IS INAPPLICABLE TO THE INSTANT MATTER AS THE DEFENDANTS WERE NOT TRYING TO RECOVER POSSESSION OF THE PROPERTY FROM THE PLAINTIFF

The plaintiff now moves for summary judgment as to the Second Count of the Complaint asserting the argument that the defendants violated Conn Gen. Stat. §§47a-43(a)(3) and (4) when they changed the locks to the Property on February 13, 2015 and detained the plaintiff's property.  Conn. Gen. Stat. §47a-43 provides in relevant part:

> (a) When any person . . . (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court.

The plaintiff argues that to prevail under §47-43 he must establish he was in actual possession of the premises, meaning he exercised dominion and control that owners of such property usually

- 10 -

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

exercise, even if there is no continuous presence on the land.  Butler asserts there are no genuine issues of material fact in dispute as to the fact that he exercised dominion over the Property and that the defendants forcibly entered and detained his personal property.

The defendants assert the Property was not safe for Butler or anyone else who had not taken proper precautions, and as the Property was not habitable they did not violate the letter or spirit of the Statute.  As noted in the plaintiff's Memorandum of Law, Connecticut's Supreme Court has held that the purpose of §47a-43 is to prevent landlords from resorting to self-help to recover possession of the premises and to avoid the costs of disturbances to the public that can result therefrom.  See Fleming v. City of Bridgeport, 284 Conn. 502 (2007).  The Fleming Court opined:

> There are several reasons why the law cannot suffer a forcible entry upon a peaceable possession, even though it be in the assertion of a valid title against a mere intruder: First. Whoever assumes to make such an entry makes himself judge in his own cause, and enforces his own judgment. Second. He does this by the employment of force against a peaceable party. Third. As the other party must have an equal right to judge his own cause, and to employ force in giving effect to his judgment, a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties. Id at 513.

Connecticut Courts have held with regard to a cause of action based upon detainer that: "To make a detainer forcible or one with a strong hand, a plaintiff must prove that the detainer was accomplished by some circumstance of actual or threatened violence calculated to intimidate the plaintiff and to deter him from asserting or maintaining his rights." Hartford Realization Co.

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510

Halloran
& Sage LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

v. Travelers Ins. Co., 117 Conn. 218, 225; 167 A. 728 (1933).  In Szekeres v. Szekeres, 16 A.3d

713, 126 Conn.App. 829 (Conn.App. 2011), the Appellate Court upheld the trial court's decision

not to set-aside the jury's verdict on a cause of action based upon §47a-43(a).  The Court opined

that the jury could have reasonably found based upon the evidence that the entry into the house

was valid based upon the existence of an emergency.

There is no genuine issue of material fact in dispute that the defendants did not change

the lock to recover possession of the Property as against Butler's interest therein.  Conn. Gen.

Stat. §47a-16 provides in relevant part that: (d) A landlord may not enter the dwelling unit

without the consent of the tenant except (1) in case of emergency . . . or (4) if the tenant has

abandoned or surrendered the premises.  In the instant case, there is no genuine issue of material

fact in dispute as to the fact that the defendants' actions were taken in response to an emergency

situation that existed on January 12, 2015, when the water leak was discovered by the

defendants' agent, and again on February 13, 2015 when it was determined that asbestos and

mold contamination may exist in the Property.[3]

---

[3] There is no genuine issue of material fact in dispute as to the fact that a portion of the dining room ceiling was disturbed either intentionally or as a result of the water leak.  Exhibit H of the Plaintiff's Memorandum of Law is a report from Envirocheck.  Page 3 of the report provides in part living room and dining room inspected.  General hygiene poor, evidence by contents and dust and debris on the surfaces.  Musty odor sensed.  Hardwood and vinyl sheet flooring.  Drywalls and flat drywall ceilings (southwest portion appeared to have fallen down).  Evidence of 'water like' and/or 'moisture like' swelling and streaking of the dining room walls (See photos #8-10), staining on the dining room ceiling (see photo #8-9) and living room east ceiling (see photo #6) and lifting of the living room hardwood flooring (see photo #7). . .  Furthermore, on Page 8 of the report it provides: "ENVIROCHECK, INC. finds that the tested/affected areas in the 2nd floor hallway, living room and basement of the subject property appear to exhibit an abnormal and above background total airborne fungal spore presence.  Elevated moisture levels conducive to fungal growth were detected in the dining room. . . .  On February 9, 2015, Geoffrey St. Peter advised

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510



Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

It is indisputable that an uncontrolled water leak is an emergency situation in a residence. This point is clearly illustrated by the extent of the damage to the Property, which required, *inter alia*, the removal of most of the walls and ceiling in the dining room, as well as all of the floors on the first floor of the Property. (See Exhibit H of the Pltf. Mem. of Law, p. 11 -12, Recommended Scope of Work.)   On February 13, 2015, when the defendants' management received information that the Property may have been contaminated by asbestos as well as mold, its action of securing the Property was a reasonable reaction to the information.  Specifically, the defendants sought to protect the health and safety of the plaintiff and anyone that might attempt to enter the Property without the proper protective equipment.

Butler testified that in his opinion the Property was not habitable after the water leak occurred. The plaintiff acknowledges that he would not have wanted to be exposed to asbestos. He also testified that the hardwood floors were buckled and presented a tripping hazard. Additionally, Butler testified that he expected the defendants to have his belongings tested for asbestos contamination before they were released to him.   Butler acknowledged that the defendants paid for his personal belongings to be moved to his new residence.   In compliance with Plaintiff's counsel's request, Butler identified which items of his personal property he wanted moved, and the defendants paid to have them moved to his new residence.

---

Gonzalez that there was asbestos in the walls ceilings and bottom layer of the kitchen floor. (St. Peter Aff., Exhibit C.)  Section 4.7.2 of the defendants' Asbestos Operations & Maintenance Plan called for vacating all personnel and occupants from the immediate area, isolating the affected area and providing appropriate protection for workers. (Maguire Aff. ¶14, 15.)

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

Clearly, the defendants were not trying to recover possession of the unit from Butler in an attempt to eject him, as they offered him another unit within the same development.   On Tuesday, February 17, 2015, Attorney Turk sent Butler's attorney a letter offering to transfer Butler to 95 Smith Drive.  On February 18, 2015, Butler signed a lease for that property and was given keys to the unit.

The Complaint alleges the defendants refused to give Butler access to his personal belongings after the Property was secured.  It is indisputable that Turk communicated with Butler's attorney and advised him that the Property was not safe for Butler, but if he felt otherwise he would be willing to discuss it.   It is further evident from the plaintiff's exhibits that the defendants' agents took steps to have Butler's belongings tested to determine the level of contamination.   As noted above, Butler expected the defendants to have this testing done, however he takes issue with the length of time it took to perform the tests. While the plaintiff is not happy with the fact that it took the defendants several weeks to have the testing completed, it is indisputable that he acquiesced to the testing so that he could be sure his possessions were not contaminated before he got them back.

For the reasons discussed above and in the defendant's Motion for Summary Judgment, Docket Entry 70, it is their position that summary judgment should enter in favor of the defendants as to Count Two.  Alternatively, this Court should reserve the issue for a jury, as there is a genuine issue of material fact in dispute as to whether the plaintiff would have had to

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

use force to regain possession of his personal property or just ask the defendants to release it prior to the testing being completed.

**THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGEMENT AS TO COUNT THREE OF THE COMPLAINT ON THE BASIS THAT THERE IS NO EVIDENCE TO SUPPORT THE PLAINTIFF'S CLAIM THAT THEY COMMITTED CONVERSION OF HIS PERSONAL PROPERTY.**

The plaintiff argues the defendants committed the tort of conversion by detaining Butler's possession inside a locked apartment to which he had no access for an indefinite period of time. The plaintiff does not argue that the defendants permanently retained possession of any of his belongings, but claims they detained them for an indefinite period.

The tort of conversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another to the exclusion of the owner's rights. Deming v. Nationwide Mutual Insurance Co., 279 Conn. 745, 770, 905 A.2d 623 (2006). To establish a prima facie case of conversion, a plaintiff must demonstrate that:   (1) the material at issue belonged to the plaintiff, (2) that the defendant wrongfully deprived the plaintiff of that material for an indefinite period of time, (3) that the defendant's conduct was unauthorized and (4) that the defendant's conduct harmed the plaintiff. News Am. Mktg. In-Store, Inc. v. Marquis, 86 Conn.App. 527, 545, 862 A.2d 837, 848 (2004) aff'd, 276 Conn. 310, 885 A.2d 758 (2005). Abandonment of personal property by the owner is a complete defense to an action for damages for its conversion. See 18 Am. Jur.2d Conversion § 102, see also Sharkiewicz v. Lepone, 139 Conn. 706, 707-08, 96 A.2d 796, 797 (1953).

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

The plaintiff seeks treble damages pursuant to General Statutes § 52-564, which provides that: "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Statutory theft under § 52-564 "is synonymous with larceny under General Statutes § 53a-119." Discover Leasing, Inc. v. Murphy, 33 Conn.App. 303, 309 (1993), citing Lauder v. Peck, 11 Conn.App. 161, 165, 526 A.2d 539 (1987). Section 53a-119 provides, "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

There is not a scintilla of evidence to support a finding that the defendants stole and or intended to deprive Butler of his personal property, therefore the plaintiff would not be entitled to relief pursuant to Conn. Gen. Stat. §52-564.  Butler testified that the only property that he is missing was an inoperable CB radio.  The CB radio was stored in his basement.  Butler testified that he did not remember the last time he had seen the radio.  Moreover, Butler testified that he would leave the back door to the Property unlocked when he was not home. Butler testified that he has no idea who took the CB radio. Butler testified that he does not know for sure if a HallKeen employee stole the CB radio.  Butler testified that he does not know when it was taken. Mr. Rodriguez attested to the fact that no one on his staff took Butler's CB radio. Mrs. Maguire attested to the fact that it was not HallKeen's intent to retain Butler's personal property when it changed the locks to the Property.

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

Halloran
&Sage LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

With regard to the plaintiff's argument that the defendants wrongfully detained the plaintiff's property for an indefinite period, the undisputed evidence establishes the fact that the plaintiff allowed the defendants to retain his property until it had been tested for asbestos and mold contamination.  Plaintiff's Exhibit D, pages 28 and 34 of his Memorandum of Law establish that the plaintiff had acquiesced to the defendants' attempts to test his belongings for contamination.  Furthermore, it is indisputable that as soon as the test results were known to the defendants they were communicated to the plaintiff.  The plaintiff's contention that it took the defendants too long to complete the testing, does not convert the defendants actions into a compensable tort.  This is especially true in this case where the plaintiff left much of his personal belongings for the defendants to dispose of for him, essentially abandoning what he did not want.

Based upon the indisputable fact that the plaintiff can proffer no evidence that the defendants or its agent(s) committed the act of conversion with regard to the CB radio or his other personal property, this Court should grant the defendants' motion for summary judgment as to Count Three of the Complaint. Alternatively, it should find there is a genuine issue of material fact in dispute as to whether the plaintiff consented to the defendants retaining his property pending the asbestos testing.

**THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO COUNT FOUR OF THE COMPLAINT ON THE BASIS THAT THEIR ACTIONS WERE NOT AGAINST PUBLIC POLICY AND A JURY COULD ONLY CONCLUDE THAT THEY ACTED REASONABLY UNDER THE CIRCUMSTANCES.**

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

If this Court finds that the defendants' actions were legally justified, non-discriminatory and non-retaliatory, it should enter summary judgment in their favor as to the plaintiff's claim under CUTPA.  Conn. Gen. Stat. § 42-110b provides in relevant part that: "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  The Act further provides under Conn. Gen. Stat. § 42-110g that:

> (a) Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper.

Connecticut Courts have held that: "[w]hether a practice is unfair and thus violates CUTPA is an issue of fact." DeMotses v. Leonard Schwartz Nissan, Inc., 22 Conn.App. 464, 466 (1990). However, Connecticut Courts will enter summary judgment when the evidence is so clear and establishes a jury could reach but one conclusion.

Connecticut applies the cigarette rule, which sets out the standard for a CUTPA violation:

> (1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559, 591-92 (1995).

- 18 -

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510



Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

"All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Cheshire Mortgage Service, Inc. v. Montes, 223 Conn. 80, 106 (1992).

The plaintiff argues that because the defendants violated the detainer statute, this Court should find they committed a CUTPA violation. While Connecticut courts have held a CUTPA violation can be found where liability is established in entry and detainer actions, in the case at bar the defendants have presented evidence that there was no violation of the detainer statute. (See Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243 (1988) holding a CUTPA violation can be found based on a violation of Connecticut General Statutes 47a-43(a).) "There must be some nexus with a public interest, some violation of a concept of what is fair, some immoral, unethical, oppressive or unscrupulous business practice or some practice that offends public policy." Muniz v. Kravis, 59 Conn.App. 704, 715, 757 A.2d 1207 (2000). As discussed above, the public policy reasons behind Conn. Gen. Stat. §47a-43(a) is to deter landlords from resorting to self-help to recover possession of a property.

There is no genuine issue of material fact in dispute as to the fact that the defendants were not attempting to regain possession of the Property. The act of changing the locks to the plaintiff's Property was taken to protect his health and safety and any other individuals that might attempt to enter the Property. They did not act to regain possession of the Property in order to evict the plaintiff. As discussed more fully above, the defendants assert that their

- 19 -

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

actions did not violate any statute cited by the plaintiff in his Complaint.  Furthermore, the defendants assert that their actions were objectively reasonable and in accord with public policy. Specifically, once the defendants became aware that the Property may have been contaminated by asbestos and mold, they took steps consistent with its established asbestos plan and made arrangements for a new residence for the plaintiff. As discussed above, the undisputed facts clearly establish that the defendants' actions were not immoral, unethical, oppressive or unscrupulous. Therefore, the defendants are entitled to summary judgment as to Count Four of the Complaint and the plaintiff's Motion should be denied.

**<u>CONCLUSION</u>:**

    For the reasons set forth above and in the defendants' Motion for Summary Judgment, the defendants respectfully request this Court deny the plaintiff's Motion for Summary Judgment and grant the defendants' Motion for Summary Judgement as to all Counts of the Complaint.

One Century Tower
265 Church Street
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

THE DEFENDANTS:
HALLKEEN MANAGEMENT, INC.; AND
HALLKEEN EAST HARTFORD
LIMITED PARTNERSHIP


By: */s/ Mark A. Perkins*
Mark A. Perkins, Esq.
HALLORAN & SAGE LLP
One Century Tower
265 Church Street, Suite 802
New Haven, CT 06510
Fed. Bar #ct22419
Phone:  203-672-5488
Fax:  203-672-5480
perkins@halloransage.com
Its Attorneys

- 21 -

One Century Tower
265 Church Steet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591

## CERTIFICATION

This is to certify that on this 13th day of July, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_/s/ Mark A. Perkins_____
Mark A. Perkins, Esq.

- 22 -

One Century Tower
42830 52 v. 1 treet
Suite 802
New Haven, CT 06510

HALLORAN
&SAGE LLP

Phone (203) 672-5432
Fax (203) 672-5480
Juris No. 432591